FREDERICK *v*. CITY OF DETROIT.

1. CARRIERS—BUS PASSENGERS—STANDARD OF CARE—INSTRUCTIONS.

   Instruction in bus passenger's action against defendant city, as common carrier, for injuries sustained due, as she claimed, to worn rubber flooring and accumulation of dirt thereon and omission to provide a railing for the support of passengers alighting from its bus to the street, that a common carrier owed "a higher degree of care to its passengers than a person ordinarily owes to another person"; that due care means that amount of care a reasonably prudent person would exercise under the circumstances then and there existing, that "it is more difficult for a common carrier to measure up to the standard of due care than it is for an ordinary person" because of the nature of the business; that a common carrier owes due care just like everybody else but has a harder time reaching that standard than the ordinary person does; that they are not insurers and that it was for the jury to determine whether there was a failure to use that amount of care that a reasonably prudent person would use under the circumstances, that a common carrier, a reasonable common carrier, would and should use *held*, a substantially correct statement of the applicable law.

2. SAME—PASSENGERS—NEGLIGENCE.

   The conduct of a common carrier of passengers is tested by the common law of negligence standard of reasonable care appropriate to the circumstances of the case, a standard of negligence which allows the fact finder to determine that some factual circumstances reasonably require greater or lesser diligence than do other circumstances in order to constitute reasonable or due care.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 10 Am Jur, Carriers §§ 1667, 1668.
[2] 10 Am Jur, Carriers § 1245 *et seq.*
[3] 38 Am Jur, Negligence § 29.
[5] 53 Am Jur, Trial § 156 *et seq.*
       38 Am Jur, Negligence § 344 *et seq.*
[6] 53 Am Jur, Trial, § 293 *et seq.*

3. Negligence—Common-Law Standard of Care.

The common-law standard of reasonable care is constant although it may require an infinite variety of precautions, or acts of care, depending upon the circumstances, and it is primarily a question of fact as to just what precautions were appropriate to the danger apparent in the case at hand.

4. Carriers—Passengers—Standard of Care—Instructions.

A trial judge's description in charge to the jury of the standard of duty of a common carrier of passengers in terms of high, higher, or highest, care or the like, impinges upon the function of the jury as finder of fact.

5. Courts—Definition of Duty.

It is the court's function to determine as a matter of law whether the relation of the parties gives rise to a duty and to define it.

6. Same—Opinions—Reasons for Granting or Denying Certain Motions.

A trial judge is required to make a concise statement of his reasons for granting or denying motions for new trial, amendment of judgment, and for judgment notwithstanding the verdict (Court Rule No 47, § 3 [1945]; GCR 1963, 527.7).

Appeal from Wayne; Fitzgerald (Neal), J. Submitted March 6, 1963. (Calendar No. 70, Docket No. 49,446.) Decided June 6, 1963.

Case by Rose Frederick against City of Detroit, Department of Street Railways, for personal injuries sustained in fall while alighting from bus. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Francis J. McDonald* and *Francis J. Markey,* for plaintiff.

*Leo A. Sullivan* and *Ralph L. Hayes,* for defendant.

Souris, J. Plaintiff seeks reversal of an adverse jury verdict and denial of her subsequent motion

for new trial on the ground that the trial judge instructed the jury improperly on the degree of care owed by a common carrier to its passengers. The case went to the jury on plaintiff's theory that defendant negligently permitted the rubber flooring of its bus to become worn and dirt to accumulate thereon and that it negligently omitted to provide a railing for the support of passengers alighting from its bus to the street. It was her claim that while leaving the bus she slipped on the worn, dirty flooring and, absent a railing which she could grasp for support, fell to the ground and suffered injuries.

The language of the instruction challenged by plaintiff is as follows:

"Now, I will say this to you at this point; that the D.S.R. is not liable unless they were negligent. They are not an insurer. They are a common carrier. A common carrier has, in the vernacular, a higher degree,—owes a higher degree of care to its passengers than a person ordinarily owes to another person. Now, that definition is open to question; because the actual definition reads that they have the duty,—anyone has the duty to exercise due care. That is the general test of negligence. Do you exercise due care? And, what do you mean by 'due care'? Due care means that amount of care that a reasonably prudent person would exercise under the circumstances then and there existing. But where the common carriers come into a different category, as it were, is the fact that it is more difficult for a common carrier to measure up to the standard of due care than it is for an ordinary person. The reason for that greater difficulty is precisely because he is a common carrier; he is carrying people for hire; and that makes him something less than an insurer, but someone who should exercise more care, in order to come up to the standard of due care, than an ordinary person. So, the Supreme Court in this State has sometimes referred,

—and I personally believe erroneously,—to the fact that the common carrier owes a higher degree of care. I think that that is ultimately what it amounts to, but I think that is a very inaccurate way of stating it. They owe due care just like everybody else, but they have a harder time reaching that standard than the ordinary person does; which I think is the correct way to put it. They are not insurers. Everybody that travels on a bus cannot travel with the assurance that if he gets hurt, the bus company is bound to pay for his injuries, or the city is bound to pay for his injuries. If they were insurers, they would have to; but they are not. However, they do have that high standard to meet, that all public carriers have. They have to measure up to the test of due care owed by a bus company. If this lady slipped due to her own fault, the D.S.R. is not liable. If they are to be liable, you must find that the D.S.R. did something that they should not have done; or they failed to do something that they should have done. That is the only way the D.S.R. can be found liable in this case. Now, either they had the handrails there, or they didn't; they should have had them there, and they didn't have them there; there was something on the floor, and it shouldn't have been there; or they should have removed it, and they didn't; or there was a slippery mat that was worn and dangerous, or there wasn't. Now, you are the people that must determine those issues. * * *

"What is negligence? I will define it. Negligence is the failure to use that amount of care that a reasonably prudent person would use under the circumstances. That is the standard by which the D.S.R. liability must be measured in this case. You must ask yourselves, did the D.S.R. use the usual amount of care in this case that a common carrier, a reasonable common carrier, would and should use. That is the standard you go by when you are determining liability."

Citing *DeJager* v. *Andringa,* 241 Mich 474; *Durfey* v. *Milligan,* 265 Mich 97; *Trent* v. *Pontiac Transportation Co., Inc.,* 281 Mich 586 (2 NCCA NS 485); and *Bordner* v. *McKernan,* 294 Mich 411, plaintiff contends the trial judge erred in not clearly and concisely instructing the jury that she was owed a high degree of care, not just ordinary care, from the D.S.R. She claims that the instruction given, for all practical purposes, advised the jury that common carriers owe their passengers the same degree of care and diligence that others owe one another in the pursuit of their daily affairs. Without denying that the instruction can be read to impose upon carriers only a duty of due care as plaintiff contends, defendant maintains that it can, and should, be read as requiring no less than "a high degree of care," claimed by defendant to be a correct statement of its duty, by its reference to the greater difficulty a common carrier has in measuring up to a standard of due care than does an ordinary person and by its statement that a common carrier, because it carries people for hire, should exercise more care than an ordinary person. I agree with plaintiff that the instruction imposes upon defendant only the duty of due care, but that, in my view, is a correct statement of the law of this State, some of our prior opinions to the contrary notwithstanding and further notwithstanding the defendant's apparent reluctance to urge upon us such interpretation of the law more favorable to it than that which it uncritically assumes to be the law.

We have recently expressed disapproval of contributory negligence instructions which expressly, or by fair inference, bar recovery by plaintiffs because of their own "slight negligence." *Iwrey* v. *Fowler,* 367 Mich 311; *Clark* v. *Grand Trunk Western R. Co.,* 367 Mich 396; and *Mack* v. *Precast Indus-*

*tries, Inc.,* 369 Mich 439. In those cases it was correctly conceded that the law imposed upon the plaintiffs no duty burden greater than ordinary or due care to avoid negligent injury to themselves and, hence, instructions which seemingly inferred the plaintiffs were barred from recovery for slight negligence or, put another way, for failure to exercise great care, were held erroneous. In this case of Frederick, however, while the parties assume that the law imposes upon the defendant a duty more stringent than due care,—a duty to exercise a high degree of care, or the highest degree of care, for the safety of its fare-paying passengers,—the law correctly stated requires no more than due care and, therefore, had the challenged instruction imposed a duty burden greater than due care, we would be obliged to strike it down consistent with our holdings in *Iwrey, Clark,* and *Mack.*

Each of the last 3 cases relied upon by plaintiff, *Durfey* v. *Milligan, Trent* v. *Pontiac Transportation Co., Inc.,* and *Bordner* v. *McKernan,* all cited above, relies upon the first of plaintiff's cited cases, *DeJager* v. *Andringa,* for the stated rule of law that a common carrier has the duty to exercise a high degree of care for the protection of passengers. *DeJager,* in turn, relies upon *King* v. *Neller,* 228 Mich 15, for the same proposition but, qualifies it (as do *Trent* and *Bordner*) by explaining that such duty to exercise a high degree of care means care proportionate to the "nature and risk of the undertaking in view of the nature of the means of conveyance employed," quoting 10 CJ, Carriers, § 1295, p 855. In further elaboration and quoting again from the cited text authority, the Court in *DeJager* explained that negligence in that context is "simply the failure to use the amount of care, skill, and diligence required by the nature of the undertaking and the circumstances of the case." By its qualifi-

cation and explanation of the term "high degree of care," the Court disclosed that it was testing defendant bus operator's conduct by the classic common law of negligence standard of reasonable care *appropriate to the circumstances of the case,* a standard of negligence which allows the fact finder to determine that some factual circumstances reasonably require greater or lesser diligence than do other circumstances in order to constitute reasonable or due care. Viewed in this light, there can be no quarrel with *DeJager's* statement of the law as theretofore it had been authoritatively pronounced, as we shall soon note, although (it must be conceded) it has been frequently misapplied, as it was in *Durfey.*

A fact of consequence not to be overlooked is that in neither *DeJager, Durfey, Trent,* nor *Bordner* did this Court approve a jury instruction that a common carrier's negligence is to be determined by a standard different from that of reasonable care. In *DeJager* and *Trent,* the Court reviewed granted motions for directed verdict; in *Durfey,* it reviewed a case tried to the court without a jury; and in *Bordner,* it tested a jury's verdict against a great weight challenge. What the Court said in the procedural context of those appeals may not be adopted uncritically for purposes of jury instruction. And perhaps therein lies the reason for the confusion which undeniably exists in our reported decisions involving consideration of the duty burden borne by common carriers of passengers for hire. What an appellate court says in determining on review whether a trial record discloses factual compliance with the duty of reasonable care appropriately may be cast in terms of positive, comparative, or even superlative degrees, for then its task, as fact reviewer or determiner of fact sufficiency, is to apply the standard of reasonable care to the factual circumstances disclosed by the record,—circumstances

which, because of the relation between the parties, because the instrument of harm is in the exclusive control of 1 party, or because the risk of physical harm is patently present, may reasonably require acts of great, greater, or greatest diligence to meet the standard of care reasonable under such circumstances whereas other factual circumstances might reasonably require lesser acts of diligence. But its language thus used should not be, as it has been and is sought here to be, taken as a pronouncement of a different, more exacting, standard of care required of carriers nor should such appellate judicial language be considered appropriate for use in instructing juries. See 32 ALR 1190. The common-law standard of reasonable care is constant although it "may require an infinite variety of precautions, or acts of care, depending upon the circumstances, and * * * it is primarily for the jury to say just what precautions were appropriate to the danger apparent in the case at hand." 2 Harper and James, The Law of Torts, § 16.13. *Christoff* v. *Noto,* 327 Mich 514, also cited by plaintiff, demonstrates the error of thus uncritically adopting appellate court language for purposes of jury instruction. Likewise, see *King* v. *Neller, supra,* cited in *DeJager,* where the trial judge's charge fairly instructed the jury, but where this Court itself perverted its meaning in affirming a jury verdict based upon it.

That the standard of care imposed in this State upon common carriers of passengers is the common-law standard of due care was authoritatively announced for a unanimous Court almost 90 years ago by Mr. Justice Campbell, speaking for himself and Chief Justice Graves and Justices Cooley and Christiancy, in *Michigan Central R. Co.* v. *Coleman,* 28 Mich 440 (4 Am Neg Cas 1). In reversing a jury verdict against a railroad for its negligence in starting its train before a passenger could get

securely on board, the Court condemned the jury instruction reflected in the following passage taken from the Court's opinion (p 449):

"The jury were told that carriers of passengers are 'legally bound to exert the utmost care and skill in conveying their passengers, and are responsible for the slightest negligence or want of skillfulness whether in themselves or their servants.' 'That the law is, that common carriers of passengers are bound to the utmost care and skill in the performance of their duty. That the degree of responsibility to which carriers of passengers are subjected is not ordinary care, which will make them liable for ordinary neglect, but extraordinary care which renders them liable for slight neglect. It is the danger to the public which may proceed even from slight faults, unskillfulness or negligence of passenger carriers or their servants, and the helplessness in which passengers by their conveyances are, which make this duty of extraordinary care a legal one.' "

Justice CAMPBELL's analysis of the instruction follows (pp 449, 450):

"The language used would fairly permit the jury to find anything to be negligence which could by any possibility be avoided. But negligence is neither more nor less than a failure of duty. All railroad companies are held to the duty of being prudent railroad companies, and bound to conduct their business with such precautions as prudence has usually found necessary. As compared with the care needed in business involving no possible human risk, the care to be used may be properly enough called extraordinary, but as compared with each other all such companies have the same duty."

Earlier in the opinion Justice CAMPBELL had said that the care required in any business must be proportioned to its nature and risks, noting that railroading involves great risks and, therefore, requires

great caution. But the railroader's required caution which may be extraordinary when "compared with the care needed in a business involving no possible human risk," is no greater than that of a railroad company of ordinary care. As I read Justice CAMPBELL's opinion it means to me that, absent statutory standards to the contrary, a carrier of passengers is obliged to use due care, but that the actions which conform with or violate that standard of due care will vary according to the circumstances in which care is required to be exercised and will depend *upon jury determination* of what the reasonably prudent person in similar circumstances would consider reasonably necessary for the safety of passengers. When trial judges describe the *standard of duty* in terms of "high care," "higher care," "highest care" or the like, they impinge upon the jury's function as finder of fact.

Unfortunately, about 40 years after *Coleman,* this Court, concerned with the then current "complexity of speed, appliances, and instrumentalities used in railroading," said that it could see no good reason not to declare that carriers of passengers are bound to exercise "the highest degree of care," as had declared other courts, not identified otherwise than as of "equally high character." *Marshall* v. *Wabash R. Co.,* 184 Mich 593, 604. The sweeping change in our common law apparently intended to be made in *Marshall* was not further explained and was completely unnecessary to decision. The fact is that the instruction challenged in *Marshall,* although first requiring of defendant railroad a "high degree of care and caution" such as "the most prudent, careful and cautious" railroader would use, later was corrected by the following language (p 603):

" 'You are further instructed that this defendant was not an insurer of the absolute safety of plaintiff

as a passenger upon its train, but that it was only the duty of defendant company, when carrying plaintiff as 1 of its passengers on the train in question, to use and exercise through its officers  *  *  * that degree and measure of care, prudence, and caution in constructing, repairing, and maintaining its road, ties,  *  *  *  and the running of its trains thereon, which a prudent, careful, and cautious person engaged in the same kind of business would have exercised under the same or similar circumstances and conditions.' "

Whatever undisclosed reason this Court had in 1915 for imposing an extraordinary duty of care upon carriers of passengers, our reports disclose that the rule announced has not been universally followed (see *Bogart* v. *City of Detroit,* 252 Mich 534; *Longfellow* v. *City of Detroit,* 302 Mich 542; *Routhier* v. *City of Detroit,* 338 Mich 449 [40 ALR 2d 1114]; and *Mitcham* v. *City of Detroit,* 355 Mich 182) and, when followed, it has been generally qualified and explained, as was *DeJager, supra,* so that in practical effect the standard of care judicially applied was the standard of due care which permits the fact finder to take into account variations in diligence the circumstances of each case may require of a reasonably prudent man (see *King, DeJager, Trent, Bordner,* all cited *supra; Bury* v. *Detroit United Railway,* 198 Mich 447, and *Wells* v. *Flint Trolley Coach, Inc.,* 352 Mich 35).

Having indicated my reluctance to accede to the unreasoned judicial declaration of *Marshall's* case, I would reaffirm the precepts of *Michigan Central R. Co.* v. *Coleman, supra,* which endure in many of our sister States whose courts have carefully examined the carrier's liability at the common law and have resisted the now discredited theory that de-

grees of care or of negligence are recognized by the common law in such cases.*

We have seen that Michigan, in the *Coleman* case, chose originally the traditional common-law duty of due care for determining the liability of carriers to their fare-paying passengers. That choice was followed consistently until *Marshall* v. *Wabash R. Co.*, attempted abruptly to impose a radically more stringent duty upon carriers. *Marshall's* rule since has been modified effectively by judicial addition of qualifications allowing consideration of factual circumstances for determination of what specific acts of diligence and precaution reasonably are required. For all practical purposes, we are again applying the rule of *Michigan Central R. Co.* v. *Coleman,*—the classic common law of due care, measured by the care of a reasonably prudent carrier,—while sometimes saying, in addition, that due care for passenger carriers reasonably requires greater diligence than is reasonably required from others. It is time we candidly acknowledge that cases inconsistent with *Michigan Central R. Co.* v. *Coleman* have been overruled.

It may be said that formal reaffirmation of the rule announced in *Coleman* is largely academic if we have, in fact, effectively modified *Marshall* v. *Wabash R. Co.* However, what we do, as well as what we say, in this area of the law has significance to the delicate relation between judge and jury for,

---

* It is true that all other courts are not in agreement on the standard of liability of a common carrier to its passengers. Commentators and judges have written exhaustively on the subject, and on the more generalized, but directly related, topic of the common law's recognition or nonrecognition of degrees of care or of negligence. See Green, "High Care and Gross Negligence," 23 Ill L Rev 4; Elliott, "Degrees of Negligence," 6 So Cal L Rev 91; 2 Harper and James, The Law of Torts, chapter 16, "The Nature of Negligence: Degrees of Care," § 16.13 *et seq.* For annotations of cases dealing with the liability of carriers to their passengers, see 96 ALR 727, supplementing prior annotations; 117 ALR 522; 126 ALR 461; 9 ALR2d 938; and 74 ALR 2d 1336.

as the Indiana supreme court noted in *Union Traction Company of Indiana* v. *Berry* (1919), 188 Ind 514 (121 NE 655, 124 NE 737, 32 ALR 1171), and as mentioned above, jury instructions that a carrier owes its passengers high care, higher care, highest care or the like, constitute an invasion of the fact finding province of the jury. This is a matter of grave concern to this Court, as should be evident from our recent judicial history (see, particularly *Bishop* v. *New York Central R. Co.*, 348 Mich 345). Its importance to our traditional concepts of trial by jury merits our emphasizing the basis of what is written today.

It is the court's function to determine as a matter of law whether the relation of the parties gives rise to a duty and to define it. In Michigan gross negligence differs from ordinary negligence not merely in quantum, but in the very nature of the acts and omissions and the state of mind of the party charged with gross negligence (*Wieczorek* v. *Merskin*, 308 Mich 145, and *Peyton* v. *Delnay*, 348 Mich 238) and, notwithstanding our rule of *Marshall's* case, we have since stated we recognize no degrees of negligence (*Finkler* v. *Zimmer*, 258 Mich 336, and *Grabowski* v. *Seyler*, 261 Mich 473). Accordingly, when a duty arises as a matter of law between a carrier and its passengers, it is the common-law duty of due care and it may be defined simply as the duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier. It then becomes the function of the jury to determine from the evidence what action, if any, should have been taken or omitted in order to measure up to the standard of a reasonably prudent carrier in the same circumstances. By instructing the jury that high care or the highest care is required of carriers, a court impinges upon the jury's obligation to determine the carrier's compliance with its duty of due

care by consideration of the proofs of what a reasonably prudent carrier would have done in the circumstances disclosed by the evidence. It is for the jury to decide as a matter of fact, and not for the court to decide as a matter of law, whether a reasonably prudent carrier in similar circumstances would exercise greater or lesser diligence in performance of its duty of due care owed to passengers than would a reasonably prudent person engaged in other pursuits not involving the risks inherent in a common carrier's business.

We may return now to the jury instruction challenged by plaintiff in this appeal and quoted in the forepart of this opinion. It is evident that the trial judge recognized the incongruity of our prior decisions and yet felt compelled to utilize the language of "high care" approved in some of them. Having done so he sought to explain to the jury that the duty owed by the defendant was ordinary care measured by that which "a reasonable common carrier" would use under the circumstances but that, because of the nature of a common carrier's operations, the care which would be considered ordinary care or due care for "a reasonable common carrier" might be greater than that expected from "an ordinary person" in the exercise of ordinary care. It goes without saying that the language used lacks the clarity to be desired in jury instructions. However, upon close analysis it fairly conveyed to the jury its obligation to determine whether defendant's actions constituted due care and its right, in making that factual determination, to find that a reasonably prudent common carrier in like circumstances would have exercised greater diligence than would a reasonably prudent person in the pursuit of affairs unlike those of a common carrier. Notwithstanding the understandable difficulties the trial judge experienced in explaining our own prior erroneous rul-

ings, the instruction was a substantially correct statement of the law of the case.

Absent from this record is an opinion by the trial judge in denial of plaintiff's motion for new trial, as then required by Court Rule No 47, § 3 (1945). We note, in passing, that this Court values the assistance frequently received from such opinions and undoubtedly would have benefited from the views of the learned trial judge in this case. We also note that our new court rules, GCR 1963, 527.7, likewise require a concise statement by the trial judge of his reasons for granting or denying motions for new trial and, as well, for granting or denying motions for amendment of judgment and for judgment notwithstanding the verdict.

Affirmed. Costs to defendant.

KELLY, BLACK, KAVANAGH, SMITH, and O'HARA, JJ., concurred with SOURIS, J.

CARR, C. J., and DETHMERS, J., concurred in result.