*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN MICKELS,

        Plaintiff-Appellee,

v

SUBURBAN MOBILITY FOR REGIONAL
TRANSPORTATION, also known as SMART,

        Defendant-Appellant,

and

D. MACRO CONTRACTORS, INC.,

        Defendant/Cross-Defendant,

and

CB ASPHALT MAINTENANCE, LLC,

        Defendant,

and

POCO, INC.,

        Defendant/Cross-Plaintiff.

UNPUBLISHED
February 4, 2020

No. 344977
Wayne Circuit Court
LC No. 16-013725-NI

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In this third-party no-fault action, defendant-appellant, Suburban Mobility Authority for Regional Transportation (SMART),[1] appeals as of right the trial court's order denying its motion for summary disposition. We affirm.

On September 16, 2016, plaintiff was traveling home from work on a SMART bus when the bus hit a bump in a construction zone, causing plaintiff to fly out of her seat and sustain injuries. Plaintiff brought suit contending that the bus driver negligently drove through the construction zone at an excessive speed. SMART contended in its motion for summary disposition that plaintiff's injury was the result of a "usual incident of travel," and accordingly, SMART was entitled to dismissal of the claim pursuant to MCR 2.116(C)(7) (governmental immunity) and MCR 2.116(C)(10) (no genuine issues of material fact). The trial court denied SMART's motion, and SMART now appeals that denial. SMART primarily argues that the trial court misunderstood and misapplied the "usual incidents of travel" doctrine. We disagree.

"The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 339; 830 NW2d 428 (2012), citing *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). "The applicability of governmental immunity is a question of law that is also reviewed de novo." *Seldon v Suburban Mobility Auth for Regional Transp*, 296 Mich App 427, 433; 824 NW2d 318 (2012), citing *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004). Statutory exceptions to governmental immunity are to be narrowly construed. *Maskery v Bd of Regents of Univ of Mich*, 468 Mich 609, 614; 664 NW2d 165 (2003).

As a preliminary matter, the parties do not dispute that, as a transportation authority that engages in the exercise and discharge of governmental functions, SMART is subject to the governmental liability for negligence act, MCL 691.1401 *et seq*. MCL 691.1407 provides, in pertinent part: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function . . . ." MCL 691.1407(1). The issue in this case is whether a statutory exception to governmental immunity applies. See *Mack*, 467 Mich at 204-205 (explaining that, where governmental immunity applies, a plaintiff's claim is barred unless it falls within one of the statutory exceptions to immunity). One such exception can be found in MCL 691.1405, which provides governmental liability for the negligent operation of motor vehicles: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405.

In *Chandler v Muskegon Co*, 467 Mich 315, 321; 652 NW2d 224 (2002), our Supreme Court held that "operation" within the context of MCL 691.1405 encompasses "activities that are directly associated with the driving of a motor vehicle." Our Supreme Court has further held that, while engaged in the act of transporting passengers, a carrier has a "duty to exercise such

---

[1] D. Macro Contractors, Inc., CB Asphalt Maintenance, LLC, and Poco, Inc., were also named as defendants in this case, but were dismissed from the case and are not parties to this appeal.

diligence as would be exercised in the circumstances by a reasonably prudent carrier." *Frederick v Detroit*, 370 Mich 425, 437; 121 NW2d 918 (1963). "It then becomes the function of the jury to determine from the evidence what action, if any, should have been taken or omitted in order to measure up to the standard of a reasonably prudent carrier in the same circumstances." *Id*. However, "[w]hile a carrier may be held liable if a passenger is injured because a jerk or jolt of its vehicle was unnecessarily sudden or violent, ordinarily sudden jerks or jolts in stopping to let off and take on passengers are among the usual incidents of travel which the passenger must reasonably anticipate." *Getz v Detroit*, 372 Mich 98, 101-102; 125 NW2d 275 (1963) (quotation marks and citation omitted). In keeping with the concept of "usual incidents of travel," we more recently noted that, "absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel." *Seldon*, 297 Mich App at 437.

On appeal, SMART relies upon a number of cases that purport to apply the usual incidents of travel doctrine, none of which are similar to the case at hand. In *Getz*, as noted above, our Supreme Court held that "ordinarily sudden jerks or jolts *in stopping to let off and take on passengers* are among the usual incidents of travel which [bus] passenger[s] must reasonably anticipate." *Getz*, 372 Mich at 101-102. In that case, the plaintiff boarded a bus, and as the bus driver stepped on the gas, the plaintiff fell and was injured. *Id*. at 99. In *Bogart v Detroit*, 252 Mich 534, 535; 233 NW 406 (1930), the plaintiff was thrown to the floor of an electric streetcar when it came to a stop as he was moving toward an exit. Similarly, in *Zawicky v Flint Trolley Coach Co, Inc*, 288 Mich 655, 657; 286 NW 115 (1939), the plaintiff was thrown down after she signaled for a bus to stop so she could exit and it came to a "sudden stop." In *Sherman v Flint Trolley Coach*, 304 Mich 404, 406; 8 NW2d 115 (1943), the plaintiff was injured when a bus stopped to pick up another passenger. In *Russ v Detroit*, 333 Mich 505, 506; 53 NW2d 353 (1952), the plaintiff was injured while moving toward the back of a bus when the bus "came to a sudden stop." In all of these cases, our Supreme Court applied the same logic that was articulated in *Getz*: absent additional evidence of negligence, the mere sudden stopping or starting of a bus is not sufficient to establish negligence because such sudden stops and starts are "among the usual incidents of travel which [bus] passenger[s] must reasonably anticipate." *Getz*, 372 Mich at 101-102 (quotation marks and citation omitted). In this case, plaintiff has not alleged that the SMART bus suddenly stopped or started; plaintiff alleges that the bus driver was negligent for driving too quickly through a construction zone.

Plaintiff heavily relies upon *Seldon*, wherein this Court gave reference to the usual incidents of travel doctrine after the plaintiff, who was bound to a wheelchair, was injured on a SMART bus as the bus came to a sudden stop at a yellow light. *Id*. at 431-432, 437. We noted that, "[i]t is well settled that, absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel." *Id*. at 437. We continued:

> Here, the record contains no evidence that [the bus driver] operated the bus negligently. The only evidence of the bus's speed near the time that plaintiff was ejected from her wheelchair shows that [the driver] was driving within the 25-mile-per-hour speed limit. Plaintiff contends that [the driver] operated the bus negligently because [the driver] failed to anticipate that the green traffic signal light would change to yellow. This argument is untenable, however, because [the

-3-

driver] did not act negligently by traveling within the speed limit while the traffic signal light was green. [*Id*. at 437.]

We held—and SMART strongly relies upon the idea—that "the mere fact that an injury occurred does not itself indicate that [a driver has] operated a bus negligently." *Id*., citing *Zawicky*, 288 Mich at 659. Again, however, *Seldon* involves a sudden stop that was a normal incident of travel; this case does not. Moreover, we disagree with SMART's assertion that plaintiff relies on her injury as the only evidence of the bus driver's negligence.

Unlike the cases relied upon by SMART, the plaintiff in this case alleged that the bus driver was driving at an unreasonable speed through a construction zone, and that plaintiff was thrown from her seat and injured as a result. Two additional passengers provided affidavits in support of that assertion. Additionally, plaintiff's husband visited the area after the incident, and later provided an affidavit in which he noted that he believed it was necessary to reduce a vehicle's speed to 15 to 20 miles per hour in order to safely traverse the construction area at issue. Coincidently, the bus driver initially indicated that she was driving at that speed, however, SMART admits that the bus driver was actually driving substantially faster than that, noting that a videorecording of the incident shows that the bus was traveling at 33 miles per hour.

Still, SMART contends that the bus driver could not have been driving at an excessive speed because the posted speed limit was 35 miles per hour. And, we note the statement in *Seldon*, wherein we stated that the driver in that case was not negligent for driving under the posted speed limit, would appear to suggest the same. *Seldon*, 297 Mich App at 437. However, as noted above, *Seldon* did not involve a construction zone or any other unusual circumstance, and importantly, MCL 257.627, which outlines the obligations of operators of motor vehicles, makes no reference to posted speed limits. The statute provides:

> (1) A person operating a vehicle on a highway[2] shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. [MCL 257.627(1).]

Our Supreme Court has specifically held that, "one operating an automobile may be guilty of negligence *even though* keeping within the statutory limit, and . . . a driver must have regard for the situation and operate his car accordingly." *Dempsey v Miles*, 342 Mich 185, 192-193; 69 NW2d 135 (1955) (citations omitted). Thus, that the ordinary speed limit of 35 miles per hour posted in the area was not reduced by the Michigan Department of Transportation (MDOT) inside the construction zone did not relieve the bus driver of her duty to operate the vehicle at a

---

[2] " 'Highway or street' means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." MCL 257.20.

careful and prudent speed given the surface of the road and other external circumstances. See MCL 257.627(1).

Video and photographic evidence presented in this case clearly shows that the SMART bus was traveling on an unpaved portion of the road in the construction zone when plaintiff was injured, and plaintiff—as well as three affiants—indicates in her testimony that a reasonable driver would have slowed down while driving through that area. The bus driver herself even testified at her deposition that she was trained and aware that bus drivers should drive slower when entering construction zones, and that she was aware of the construction zone at issue. However, the videorecording of the incident shows that the driver made no such effort to slow down while entering and exiting the construction zone, even where it is clear from the video that a noticeable bump in the road was present.

With all of that in mind, and viewing the evidence in a light most favorable to plaintiff, we agree with the trial court's conclusion that genuine issues of material fact existed with respect to whether the bus driver negligently operated the SMART bus in the construction zone. Specifically, questions of material fact exist as to whether the driver drove at an excessive speed over the lip in the road, and thus caused something other than an ordinary jerk or jolt associated with driving a motor vehicle.

SMART briefly argues that the affidavits provided by plaintiff in support of her allegation that the bus driver was driving unreasonably fast should not have been relied on because they were based on pure conjecture and speculation, and because they contradicted other evidence of record. Relatedly, SMART contends that the trial court did not give adequate weight to the testimony of MDOT employee Keith Williams, Sr., who suggested that 35 miles per hour was a safe rate of speed in the area. Both arguments are without merit.

First, SMART has misstated the law by asserting that, as a general rule, affidavits are inadmissible when they contradict other evidence of record. As pointed out in the cases cited by SMART, a party may not contradict by affidavit their own assertions "after having given damaging testimony in a deposition." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 444-445; 633 NW2d 440 (2001) (quotation marks and citations omitted); *Kaufman & Payton PC v Nikkila*, 200 Mich App 250, 254; 503 NW2d 728 (1993). Affidavits that contradict other evidence are not inadmissible as a bright-line rule. Second, we disagree with SMART's assertion that the opinion of plaintiff's affiants was based on pure conjecture and speculation. Two of the affiants were *on the bus* at the time of the incident, and the other spent time driving through the area after the accident to determine what, to him, constituted a reasonable rate of speed inside the construction zone. Particularly with respect to the first two affiants, we fail to understand how, as a general rule, two individuals who were present inside a vehicle at the time of an incident cannot attest to whether that vehicle was being reasonably operated.

Lastly, we disagree with SMART's interpretation of Williams's testimony, and with SMART's characterization of the trial court's factual findings. Williams suggested that a vehicle traveling under the posted speed limit should have had no problems traveling through the construction area, but Williams did not categorically testify that it would be safe for any vehicle to travel through the area at that speed. Even assuming that Williams had testified as SMART indicates in its brief on appeal—that the bus driver could not have acted negligently because she

was driving under the speed limit—SMART fails to explain how such testimony would somehow be less speculative than the assertions of plaintiff's affiants, who were actually present for the incident. Moreover, we note that Williams's deposition testimony could be read to suggest that a vehicle as heavy as a bus could not have caused passengers to fly out of their seats—as clearly evidenced by the videorecording—unless the bus was traveling at a high rate of speed. In any event, SMART has not adequately explained why Williams's testimony should be favored over the assertions made by plaintiff or her affiants. Again, at the very least, genuine issues of material fact exist.

With respect to the the argument provided by the dissent that MCL 257.627(1) does not apply in this case because the Legislature clearly intended for MCL 257.627(6) to apply in construction zones,[3] and to hold that both subsections could apply to construction zones would be to render the language in subsection (2)—"except as provided in subsection (1)"—nugatory, we disagree. First, we believe that the language of subsection (1) is plain and that the subsection was clearly intended to apply to all persons operating vehicles on highways, and thus, the canon against surplusage does not apply. See *People v Pinkney*, 501 Mich 259, 283-284; 912 NW2d 535 (2018) (we do not employ the canon against surplusage where doing so might controvert otherwise plain statutory language). Second, we believe that a holding that subsection (6) alone governs this case could lead to absurd results in the future. See *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998) ("Statutes should be construed so as to prevent absurd results . . . ."). This would be to say that, irrespective of the conditions of the road— whether it be inclement weather, road blockages, or any other number of circumstances that are not accounted for in determining the speed limit—persons operating vehicles in construction zones are—as a matter of law—always operating their vehicles at a safe speed so long as they are driving below the posted limit.[4] Such a reading would defeat the purpose of subsection (1),

---

[3] MCL 257.627(6) provides, in pertinent part:

> A person operating a vehicle on a highway, when entering and passing through a work zone described in section 79d(a) where a normal lane or part of the lane of traffic has been closed due to highway construction, maintenance, or surveying activities, shall not exceed a speed of 45 miles per hour unless a different speed limit is determined for that work zone by the state transportation department, a county road commission, or a local authority, based on accepted engineering practice. The state transportation department, a county road commission, or a local authority shall post speed limit signs in each work zone described in section 79d(a) that indicate the speed limit in that work zone and shall identify that work zone with any other traffic control devices necessary to conform to the Michigan manual of uniform traffic control devices. A person shall not exceed a speed limit established under this section or a speed limit established under section 628.

[4] We also note the dissent's argument that the Legislature only intended for MCL 257.627(6) to apply to construction zones because, unlike with inclement weather, governing authorities may realistically determine "reasonable and proper speeds" in construction zones. This ignores the fact that, construction zones, by their very nature, are frequently changing. What is a safe and

which is intended to ensure that every driver is paying adequate attention to conditions outside their vehicle that might require them to reduce their speed in order to operate their vehicle safely. And, while we agree that the Legislature may have intended to place a burden on MDOT and other local regulatory agencies to determine and post safe speed limits in construction zones, we do not believe the creation of that burden extinguished or lessened the burden on drivers to operate vehicles carefully and prudently given the conditions of the road.

Affirmed.


/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto

---

proper speed during one phase of construction may be unsafe during another, which is exactly why, in our opinion, the Legislature intended for all drivers to be subject to the requirements of subsection (1).