BOGART v. CITY OF DETROIT.

CARRIERS—STREET RAILWAYS—SUDDEN STOPPING OF CAR—NEGLIGENCE.

Passenger in street car who voluntarily left his seat, and, when standing near exit without anything on which to support himself, fell when car stopped suddenly, and sustained serious injuries, is not entitled to recover therefor.

Negligence in starting street car with sudden jerk, see annotation in 23 L. R. A. (N. S.) 891; 34 L. R. A. (N. S.) 225.

Error to Wayne; Webster (Clyde I.), J. Submitted October 8, 1930. (Docket No. 32, ·Calendar No. 35,173.) Decided December 2, 1930.

Case by James W. Bogart against City of Detroit, a municipal corporation, for personal injuries. From directed verdict and judgment for defendant, plaintiff brings error. Affirmed.

*Prentis, Fitch & Carpenter,* for plaintiff.

*Fred L. Vandeveer* and *James S. Shields,* for defendant.

SHARPE, J. Plaintiff, 69 years of age, was a passenger for hire on one of defendant's electric street cars in going from his downtown place of business to his home in the residential part of the city of Detroit. When the car approached the street intersection at which plaintiff desired to alight, he signaled for it to stop by pressing an electric button. He then arose from his seat and proceeded forward in the aisle towards. the exit door at the center, and on the right side of the car. Two passengers stood near the place of exit, one having hold of a seat and the other of a rod. Plaintiff edged his way between these passengers. There was nothing available for him to grasp. He testified that he saw "a rapid motion of the arms" of the motorman, and that "the car stopped with a quick jerk and in a fraction of a second I was thrown to the floor." He was then asked:

"*Q.* Well, state from your experience in riding in other cars what sort of a stop was made by the car at that time and place?"

And, over objection, answered: "It was unusual, * * * unusually sudden, violent." The word "violent" was stricken out.

The only other witness concerning the accident was a man driving an automobile in the rear of the car, who testified that the car passed the intersection where it should have stopped, and that it "stopped suddenly," it "just stopped all of a sudden."

The plaintiff was seriously injured by his fall. In this action he seeks to recover the damages incident thereto. Defendant's motion for a directed verdict, made at the conclusion of the plaintiff's proofs, was granted. Plaintiff seeks review of the judgment entered pursuant thereto by writ of error.

Questions involving the suddenness with which a car was stopped or started were considered and passed upon by this court in the following cases: *Bradley* v. *Railway Co.*, 94 Mich. 35; *Etson* v. *Railway Co.*, 110 Mich. 494; *Conroy* v. *Railway*, 139 Mich. 173; *Quick* v. *Railway*, 143 Mich. 443; *Snyder* v. *Traction Co.*, 154 Mich. 418; *Schultz* v. *Railway Co.*, 158 Mich. 665 (27 L. R. A. [N. S.] 503); *Ottinger* v. *Railway*, 166 Mich. 106 (34 L. R. A. [N. S.] 225, Ann. Cas. 1912D, 578); *Clifford* v. *Railway*, 216 Mich. 377, and in all of them it was held that there could be no recovery. There was a lengthy discussion and citation of cases in this and other courts in the *Ottinger Case*. We quote therefrom:

"She" (plaintiff) "testified that the stop was sudden, without slowing down. The witnesses agree that the car was stopped abruptly, and that this caused her to fall.  *  *  *

"It is a well-known fact that steam and street cars are not so stopped that the standing passengers can avoid the tendency to fall without effort, and the same is true when the car starts. Not only is the making of time prohibitive of such deliberate starting of heavy vehicles as to avoid this, but the variation in the working of brakes prevents absolute uniformity in stopping."

There was dissent in that case, but solely on the ground that the passenger had been compelled to stand, by reason of her inability to secure a seat before she was injured. In this case, as in that, there was no evidence that any other person on the car was injured from the effect of the sudden stop.

Plaintiff's fall resulted in the fracture of the thigh bone of his right leg. It is urged that, while not evidence of defendant's negligence, the nature of his injury may be considered in determining the manner in which the car was stopped by the motorman. The records in the cases above referred to disclose that there was quite serious injury to the plaintiff in all of them, and in some of them even greater injury than plaintiff here sustained. In the *Etson Case* the plaintiff's back and five ribs were broken, one shoulder dislocated, and his left foot completely crushed. In the *Conroy Case* his left hand was broken, his arm permanently crooked, and his nose broken. In the *Quick Case* his face, side, and back were cut and two ribs fractured. In the *Snyder Case* the bones of the right wrist were broken and the ligaments torn and his side and shoulder badly bruised. In the *Clifford Case* two ribs were fractured, and there was injury to the lumbar and dorsal region of the spine.

Unless we are to overrule the cases cited above and announce a rule that any sudden stopping of a car, unless the reason therefor be satisfactorily explained, may be found by a jury to be a negligent operation of it, the judgment here rendered must be affirmed. The plaintiff voluntarily left his seat, and, when standing near the exit without anything on which to support himself, fell when the car stopped, and sustained serious injuries. Electric cars, required by the demands of the public who patronize them to proceed rapidly through the

streets of a busy city, will frequéntly be stopped and started with some suddenness. Injury to passengers who are standing without support may occasionally result therefrom. Such accidents are unfortunate, but our former holdings have announced the rule most consistent with the operation of such cars under the circumstances here presented. The facts in *Adelsperger* v. *City of Detroit*, 248 Mich. 399, relied on by plaintiff, distinguish it from those here presented. The *Ottinger* and *Clifford Cases* were referred to, and there was no intimation of any intent to overrule them.

The judgment is affirmed.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.