SHERMAN *v.* FLINT TROLLEY COACH, INC.

1. Appeal and Error—Directed Verdict—Evidence.
    On review of directed verdict and judgment for defendant, plaintiff must be considered to have established as true the facts disclosed by testimony produced by herself and witnesses she called and all reasonable inferences to be drawn therefrom.

2. CARRIERS—INJURIES TO PASSENGERS—SUDDEN STOPPING.

Passenger who had just boarded an electric trolley bus that had travelled some 30 or 40 feet when brought to a sudden stop, causing plaintiff, who had not seated herself, to fall to the floor, after driver had been apprised of fact another person sought passage on the bus did not establish negligence on part of defendant's driver where it does not appear bus had acquired any great speed and the stopping does not appear to have been effected with unnecessary or unusual suddenness.

3. SAME—SUDDEN JERKS OR JOLTS—TROLLEY BUSES—PASSENGERS.

Sudden jerks or jolts in stopping to let off and take on passengers and in starting are among usual incidents of travel on trolley buses which every passenger must expect and mere fact that a passenger is injured thereby will not of itself make out a case of negligence which will render the carrier liable although carrier may be liable if the jerk or jolt is unnecessarily sudden or violent.

4. SAME—CARE REQUIRED AS TO SAFETY OF PASSENGERS.

A trolley bus company is not an insurer of the safety of those it undertakes to transport but is merely required to exercise that skill, diligence and foresight for the safety of its passengers consistent with the practical conduct of its business.

5. SAME—PASSENGERS—INJURY AS EVIDENCE OF NEGLIGENCE.

The mere fact that a passenger is injured will not of itself make out a case of negligence rendering the carrier liable.

6. APPEAL AND ERROR—DIRECTED VERDICT—COURT'S FAILURE TO STATE REASONS.

Fact that circuit judge failed to announce any reason for directing verdict for defendant which had filed motion advancing but one reason for doing so sufficiently indicated ground on which court granted the motion and did not constitute reversible error where correct result was reached, although good practice requires trial judge to state his reasons for directing a verdict.

Appeal from Genesee; Gadola (Paul V.), J. Submitted January 5, 1943. (Docket No. 1, Calendar No. 42,115.) Decided February 23, 1943.

Case by Grace Sherman against Flint Trolley Coach, Inc., a Michigan corporation, for personal

injuries sustained when bus was suddenly stopped. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Ralph M. Freeman,* for plaintiff.

*Carton, Gault & Davison,* for defendant.

BOYLES, C. J. Suit for damages for injuries sustained by plaintiff while a passenger on one of defendant's electric trolley buses, caused by the sudden stopping of the bus. On trial by jury, at the conclusion of plaintiff's proofs, defendant moved for a directed verdict on the ground that plaintiff had failed to make out a prima facie case of negligence. The motion was granted and judgment for defendant entered accordingly. The only issue on this appeal is, whether the testimony adduced by plaintiff presented a question of fact for the jury.

Plaintiff, a schoolteacher, together with another woman and a girl, waited on the northwest corner of Detroit and McClellan streets, in the city of Flint, to board one of defendant's buses approaching the intersection from the north on Detroit street. The bus came to a stop so the front door was even with the sidewalk. The driver of the bus opened the door and plaintiff entered the bus, the other woman, one Mrs. Lown, entered next and the little girl, one Mary Hess, followed. Plaintiff did not have any tickets, asked for them, gave the bus driver 25 cents, received a strip of tickets, put one of them in the box, and started toward the rear of the bus. At that time the bus had been started by the driver and was moving. Plaintiff had in her hands a loose-leaf notebook, her school class book, a novel, and her purse. When plaintiff had gone a little ways toward the rear she heard someone back of her say

"There is another lady wants the bus." She glanced out of the window while walking forward, saw a Miss DeRoo coming toward the bus up McClellan street. Just after plaintiff looked out the window and turned her eyes back to see Miss De-Roo, the coach stopped. Plaintiff did not have hold of a seat or try to take hold of anything. As to what occurred then, plaintiff testified:

"And immediately there was a terrible jar and I fell backwards and twisted around and fell to the floor.

"Q. When you say 'terrible jar,' did the bus stop or keep moving, or what?

"A. The only thing I know was that there was a terrible jolt and that I fell backwards, twisted, fell to the floor. When I fell to the floor the bus was stopped.

"Q. When did the jar and that jolt you speak of occur with reference to the time that a party back of you made the remark about another lady coming, wanting the bus; how soon after that?

"A. Almost instantly."

Two seats at the front end of the bus for 5 or 6 feet faced toward the center, one seat on each side with a space between for passing to other seats farther back in the bus. These rear seats were located on each side facing toward the front. There were no other passengers on the bus—the side seats were unoccupied. When she fell plaintiff had just reached the end of the side seats at the place where the seats facing the front began. Plaintiff suffered quite severe injuries.

Mrs. Lown, the other woman who entered the bus with plaintiff, testified that she had her ticket when she got on, deposited it in the box, thought she was ahead of plaintiff in the bus, walked to the rear and took a seat, that she had gotten to her seat before

the bus started up, that her seat was over halfway
back in the bus.  She testified:

"*Q*.  Can you describe the manner in which it
stopped and whether or not it shook you up or any-
thing like that?

"*A*.  It stopped very abruptly and it sort of
brought me forward.

"*Q*.  It kind of threw you forward?

"*A*.  Yes.

"*Q*.  In your seat?

"*A*.  Yes.

"*Q*.  Any other sounds that you recall that came
from the bus when it stopped, any noise or sounds?

"*A*.  No. I do not recall seeing Mrs. Sherman
there on the bus before it stopped.  The bus had not
gone hardly any distance at all from where it took
me on as a passenger before it made this stop.  I
cannot estimate the distance.  The bus went just
about to the middle of the intersection, but I don't
know how many feet that is.  I did not see Mrs.
Sherman fall, but I saw her right after she fell while
she was lying on the floor."

On cross-examination this witness testified that
the stopping was "quite violent," that the bus could
not have attained much speed, that it was going very
slowly when it stopped in just a few feet.

Mary Hess, the young girl who boarded the bus
following the plaintiff, testified that when the bus
started from the intersection she was standing near
the fare box, that plaintiff had started toward the
rear, that after the bus pulled away from the corner
she (the witness) told the driver another passenger
was coming whereupon "the driver stopped the bus
suddenly and then Mrs. Sherman fell."  When
asked whether the sudden stop jolted her, she said
"I think it did; I don't remember."  She testified
the bus had gone 10 or 15 feet when she noticed Miss

DeRoo coming and that it went about 5 or 10 or 15 feet after the driver started to apply the brakes before it came to a full stop.

Miss DeRoo, sworn on behalf of plaintiff, testified that she was running toward the bus when it started up, that it seemed to stop suddenly when the front end was about in the middle of McClellan street, heading south, that this distance was about 40 feet from where the bus started.

The bus driver was called for cross-examination under the statute,* testified that when his attention was called to Dorothy DeRoo by the little girl on the bus he immediately threw off his power, started putting his brakes on slowly, shoved down easy on the brake pedal, looked in his rear-view mirror and saw the plaintiff going toward the rear of the bus, did not see her when she fell, that the bus had traveled probably 30 feet, that there were no vehicles or pedestrians in front of the bus.

The foregoing is substantially all the testimony offered by plaintiff to establish negligence on the part of the defendant. Plaintiff must be considered to have established as true the facts disclosed by this testimony and all reasonable inferences to be drawn therefrom. Plaintiff argues that a question of fact was presented, on which plaintiff had the right to go to the jury—that a prima facie case of negligence had been established by the proven facts and the reasonable inferences to be drawn therefrom. The difference between this situation and one where the issue is raised as to the great weight of the evidence (*e. g.,* on motion for new trial on that ground) must be conceded. However, the margin of such difference diminishes under the circumstances of this case. Nor is the question of

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—Reporter.

plaintiff's contributory negligence (if any) in issue in the case.

In the light of our previous decisions, plaintiff has failed to establish any negligence on the part of the defendant. In nearly all of the decisions of this court on the subject matter of "sudden stop" or "jerk" resulting in injury to passengers of street-cars or trolley buses, we have affirmed judgment for defendant on motion for directed verdict. In *Bradley* v. *Railway Co.*, 94 Mich. 35 (4 Am. Neg. Cas. 146), plaintiff was thrown from a streetcar by a sudden jerk, alleging that the conductor negligently failed to stop the car. There was no evidence to show what caused the sudden jerk. The court said:

"The question of defendant's negligence is not so clear. The burden was upon the plaintiff to show it. If his testimony is true, he was led to believe that the conductor was about to stop the car. He did not attempt to step down while the car was in motion; but the difficulty is that there is nothing in the case showing or tending to show to the jury just what caused him to fall off. It may have been a sudden jolting of the cars, for which the conductor or driver was in no manner responsible; at least, it is not made to appear by any affirmative testimony that the defendant company neglected any duty, except to stop when first signaled; and it does not appear that that caused the injury, but, upon the plaintiff's own theory, it was a sudden jerk—from what cause no one pretends to know. We think there was no evidence to go to the jury on this point."

In *Etson* v. *Railway Co.*, 110 Mich. 494, the only question was whether the court erred in refusing to direct a verdict for the defendant. Plaintiff, passenger on an electric car, was thrown from the plat-

form where he was standing preparatory to alighting, by a sudden jerk of the car. The court held that no negligence was shown, on the following facts:

"The only testimony supporting plaintiff's theory of the case is his own, and is that—

" 'He checked the motor, checked down. The car was almost at a standstill. I got up and went onto the step between the trailer and motor, and with my right hand I took hold of this brass rod that is there, and was hanging there for a minute, thinking it would stop altogether; and it gave a sudden jerk, and went ahead again, and throwed me under.' "

In *Conroy* v. *Railway,* 139 Mich. 173, affirming judgment for defendant by a directed verdict, this court held (syllabus):

"In an action against a street-railway company for injuries to a passenger caused by the stopping of the car by a sudden jerk, testimony that the jerk was caused by the sudden application of the brake, from witnesses who failed to testify that they saw the motorman apply the brake, but inferred the cause from what happened, was insufficient to show the cause of the jerk, or that the application of the brake was negligently made."

In *Quick* v. *W. & D. R. Railway,* 143 Mich. 443, affirming judgment for defendant by a directed verdict, this court held (syllabus):

"In an action by a passenger for injuries claimed to be the result of plaintiff's being thrown from defendant's car by a sudden jerk, evidence examined, and *held,* insufficient to show that there was any jerking of the car which was not incident to the ordinary running of electric cars over suburban lines."

In *Snyder* v. *Michigan Traction Co.,* 154 Mich. 418, plaintiff, having signaled a desire to alight,

walked toward the rear door of the streetcar, was thrown from the car by a jerk, sudden stopping. The court held (syllabus):

"In an action by a passenger on an electric car for injuries received in alighting, evidence examined, and *held*, not to establish any negligence on the part of defendant's employees in stopping the car at plaintiff's request."

In *Schultz* v. *Railways Co.*, 158 Mich. 665 (27 L. R. A. [N. S.] 503), it was held 'that decrease and increase of speed in the operation of electric cars are the ordinary incidents of travel and are not proof of negligence.

In *Ottinger* v. *Railway*, 166 Mich. 106 (34 L. R. A. [N. S.] 225, 3 N. C. C. A. 323, Ann. Cas. 1912 D, 578), it was held that streetcars may be started without waiting for passengers to reach a seat, unless there is some special and apparent reason for adopting a different course; that to stop a rapidly moving streetcar that contains standing passengers, for whom there were no unoccupied seats, so suddenly as to break the hold of a passenger upon the back of one of the seats, is not in itself negligence, in the absence of evidence that it was an unusually sudden stop or that plaintiff's fall was caused by something other than her momentum, resulting from the rapid motion of the car.

"Except in special cases streetcars may be started before all the passengers have been seated.

"In an action for personal injuries resulting to plaintiff when, while defendant's street car was rounding a curve, soon after starting, plaintiff was thrown against a seat and onto the floor while proceeding down the aisle of the car to a seat, without placing his hand on the back of a seat or otherwise taking precautions to steady himself, the trial judge

properly directed a verdict for defendant on the ground that no negligence was shown." *Clifford* v. *Railway* (syllabi), 216 Mich. 377.

It may be conceded that *Amsdill* v. *Detroit Motorbus Co.*, 233 Mich. 150, does not appear to be in line with the other decisions of this court. In that case, plaintiff, carrying her two-year-old baby, was riding the upper deck of a double-deck motorbus, had signaled her intention to descend, and upon reaching the rear of the bus at the head of the stairway was thrown down the stairway by a sudden jerk of the bus starting forward. The plaintiff was allowed to recover, although the case was reversed for excessive verdict.

In *Adelsperger* v. *City of Detroit*, 248 Mich. 399, under the circumstances of the case, defendant's negligence was held to be a question for the jury (syllabus):

"In action by bus passenger for personal injuries alleged to have been caused by fall when driver suddenly applied brakes and swerved bus, evidence that bus was being driven at excessive and unlawful speed in attempt to pass automobile, when latter turned at intersection and driver was compelled to apply brakes to prevent collision, presented case for jury, since excessive speed might be found to have causal relation to plaintiff's injuries."

In *Bogart* v. *City of Detroit*, 252 Mich. 534, judgment for defendant by directed verdict was affirmed, under the following circumstances (syllabus):

"Passenger in streetcar who voluntarily left his seat, and, when standing near exit without anything on which to support himself, fell when car stopped suddenly, and sustained serious injuries, is not entitled to recover therefor."

In *Selman* v. *City of Detroit*, 283 Mich. 413, plaintiff sued to recover damages for injuries sustained by stumbling over baggage in the aisle of a streetcar, due to sudden violent jerk or jolt of the car. In affirming a judgment entered for defendant on motion, after disagreement by a jury, the court held (syllabi):

"Sudden jerks or jolts in the movement of railroad trains or streetcars are among the usual incidents of travel which do not create liability for injuries to passengers received because thereof.

"Sudden jerks or jolts in stopping to let off and take on passengers and in starting, are among usual incidents of travel on streetcars which every passenger must expect and mere fact that a passenger is injured thereby will not of itself make out a case of negligence which will render the carrier liable although carrier may be liable if the jerk or jolt is unnecessarily sudden or violent.

"A street railway company is not an insurer of the safety of those it undertakes to transport but is merely required to exercise that skill, diligence and foresight for the safety of its passengers consistent with the practical conduct of its business."

In *Zawicky* v. *Flint Trolley Coach Co., Inc.*, 288 Mich. 655, judgment for defendant *non obstante veredicto* was affirmed. We held (syllabi):

"Trackless trolley buses which have supplanted streetcars are subject to the same rule as to sudden jerks or jolts incident to stopping to let off or take on passengers as other carriers, as it is generally known that they go rapidly and frequently come to sudden stops.

"While a carrier may be held liable if a passenger is injured because a jerk or jolt of its vehicle was unnecessarily sudden or violent, ordinarily sudden jerks or jolts in stopping to let off and take on

passengers are among the usual incidents of travel which the passenger must reasonably anticipate.

"The mere fact that a passenger is injured will not of itself make out a case of negligence rendering the carrier liable.

"A passenger in a trackless trolley bus has a right to remain seated until the bus comes to a full stop but if she stands up while it is still in motion, she must look after her own protection and hold on to whatever is furnished in order to protect herself from falling, as a passenger cannot put upon the carrier the burden of the risk she voluntarily assumes."

In *Waterman* v. *City of Detroit,* 297 Mich. 85, judgment for defendant by directed verdict was affirmed. The court (syllabi) held:

"A passenger on a streetcar cannot recover from the owner thereof for injuries sustained when another passenger lost her balance and fell onto plaintiff as the car was brought to a sudden stop unless there is shown some negligence on the part of defendant's motorman in the operation of the car.

"The fact that defendant's motorman was shown to have operated streetcar at a fast, but not an excessive or illegal, rate of speed after he became aware of presence of automobile on tracks was insufficient to justify finding of negligence in that he failed to decrease speed so as not to be required to bring car to a stop so suddenly in avoiding a collision with the automobile as to cause a standing passenger to lose balance and fall upon plaintiff who was seated."

In *Cole* v. *Simpson,* 299 Mich. 589, plaintiff claimed to have been injured by the negligent starting of the motorbus without notice or warning after it had come to a stop at a corner intersection at about midnight and while she was in the act of alighting. It was held that disputed questions of

fact were for the jury. The facts distinguish the case from the one at bar.

In Longfellow v. City of Detroit, 302 Mich. 542, decided September 8, 1942, the facts distinguish the case from the instant case. The facts and conclusions are disclosed by the syllabi as follows:

"The mere sudden stopping or starting of a streetcar is not alone sufficient evidence of negligence to take a case to the jury on such issue as such a happening is a usual and ordinary incident to be expected in such transportation.

"Violation of statutory provisions relative to speed of motor coach in business district constitutes negligence *per se* (1 Comp. Laws 1929, § 4697).

"In action for damages for personal injuries sustained by passenger of motor bus just before she was to alight therefrom when it was suddenly stopped for a traffic light 32 feet beyond usual stopping place and some 40 feet before reaching bus stop, whether or not negligence of bus driver in exceeding speed limit established by statute and ordinance was proximate cause of passenger's injuries *held*, a question for jury (1 Comp. Laws 1929, § 4697)."

Counsel in their briefs cite and quote from many cases in other jurisdictions, to which it is not necessary to refer. The law in this State has been well settled by this court. The act of starting the trolley bus before plaintiff had become seated, and the sudden stopping to receive another passenger (which purpose was known to plaintiff), was not actionable negligence. Verdict for defendant on motion was properly directed.

Plaintiff seeks reversal because the circuit judge failed to announce any reason for directing a verdict for the defendant. The fact that only one reason was advanced by defendant in moving for a di-

rected verdict, namely, failure to prove negligence, sufficiently indicates the ground on which the court granted the motion. While good practice requires that a trial judge should state his reasons for directing a verdict (*Contractors Equipment. Co.* v. *Reasner*, 242 Mich. 589), if the court had assigned a wrong reason for a correct result it would not have affected the disposition of the case in this court. *Goldman* v. *Railway Co.*, 287 Mich. 289.

Judgment affirmed, with costs to appellee.

Chandler, North, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.