**Wealthy BARNETT, Appellant,**

v.

**CITY OF DETROIT, a municipal corporation, DEPARTMENT OF STREET RAILWAYS, Appellee.**

No. 12904.

United States Court of Appeals Sixth Circuit.

June 13, 1957.

Cornelia Groefsema, Detroit, Mich., for appellant.

Leo A. Sullivan, Detroit, Mich., James S. Shields, Detroit, Mich., of counsel, for appellee.

Before MARTIN, McALLISTER and STEWART, Circuit Judges.

PER CURIAM.

Appellant sued for personal injuries sustained when a Detroit street car, which she had boarded, started suddenly, with a jerk, and caused her to be thrown to the floor of the car, as she was stand-

ing by the motorman waiting to give him her fare. The district court directed a verdict of no cause of action, upon the authority, and decisions of the Supreme Court of Michigan, holding that in such cases the mere sudden starting of a street car is not alone sufficient evidence of negligence to take a case to the jury.

Counsel for appellant admits that the Michigan cases hold, as stated by the district court, that a passenger cannot recover for damages sustained by the mere sudden starting or stopping of a street car. But counsel submits that these cases had to do with horse-drawn street cars and Peter Witt type electric street cars, which were generally in use up to and during World War II; and counsel contends that the rule, theretofore announced by the Michigan Supreme Court, should not apply to the new type "P.C.C." car which was involved in this case. In fact, counsel states that if the street car involved in the accident were one of the older type of cars in use prior to World War II, plaintiff would not have a case. The reason that plaintiff appellant considers that the Michigan cases relied upon by the district court are not applicable is because they were concerned with street cars which, as an expert witness testified, had "a hand controller that has six to eight steps. That is controlled by cams and fingers that operate on the cams. But the cumbersome method that this is done, only a limited number of steps, and there is considerable change in acceleration going from step to step in the operation of that particular car. * * * The jerking in the old car was inevitable. * * * [In] the old car, the backlash and gears you don't have in the new. * * * The effect, it would give a sudden jerk on starting, particularly after the cars had been rolling and the gears had come down this way and mesh, * * *. That would give a little more of a jerk than even the electrical equipment is already giving it." As to the new type "P.C.C." car, the witness testified that "The P.C.C. car has a very elaborate control system that is operated by a foot accelerator. The foot accelerator causes a pair of rollers to operate around a set of contacts in a very regulated fashion. The number of contacts on this particular device is 104, 52 on each side, so that the increment between the adjacent steps is very slight and the acceleration can be made very smooth. * * * The acceleration rate at which the new cars were operated is dependent on the operator. * * * The P.C.C. car has a transmission or a drive to the wheels not unlike that of the hypoid gears of the rear of an automobile." The evidence for the plaintiff was to the further effect that in order to start the P.C.C. car with a jerk, the motorman "has to press the accelerator down with a fast motion."

Since the P.C.C. car could be started without a jerk, while the older cars could only be started with, at least, a slight jerk, plaintiff contends that there was proof of negligence in starting the new car with a sudden jerk.

The decisions in the Michigan cases do not rest solely upon the premise that a street car cannot be started without a sudden jerk. It is held "Street cars start and stop quickly; this is a common incident to their efficient operation, and without it, any semblance of rapid transit would be impossible." Clifford v. Detroit United Railway, 216 Mich. 377, 185 N.W. 741, 742. "Electric cars, required by the demands of the public who patronize them to proceed rapidly through the streets of a busy city, will frequently be stopped and started with some suddenness. Injury to passengers who are standing without a support may occasionally result therefrom. Such accidents are unfortunate, but our former holdings have announced the rule most consistent with the operation of such cars under the circumstances here presented." Bogart v. City of Detroit, 252 Mich. 534, 537, 233 N.W. 406, 407.

In Ottinger v. Detroit United Railway, 166 Mich. 106, 107, 131 N.W. 528, 34 L.R.A.,N.S., 225, the court said: "It is a well-known fact that steam and street cars are not so stopped that the standing

passengers can avoid the tendency to fall without effort, and the same is true when the car starts. *Not only is the making of time prohibitive of such deliberate starting of heavy vehicles as to avoid this,* but the variation of the working of brakes prevents absolute uniformity in stopping." (Emphasis supplied.) "[If the] cars could not lawfully be started until all passengers were seated, *or if acceleration of* and checking speed *could not be prompt,* the efficiency of such cars would be seriously impaired." (Emphasis supplied.)

It is not contended by plaintiff that the Michigan cases are not applicable in case of sudden stops in the case of both the old type and the new type of street cars; or that they are not applicable to sudden jerks in starting, in street cars other than the "P.C.C." street cars. The distinction is sought to be made that, since the "P.C.C." cars can be started without the jerks of the older cars, the starting of such a new car with a jerk is evidence of negligence that will take the case to the jury.

■ A review of the many cases on the subject suggests that Michigan more strongly adheres to the rule that sudden jerks, in starting street cars, are not evidence of negligence, than do a number of other states, where such evidence may carry a case to the jury. But this is a diversity case, and, under the rule in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, we are bound by the decisions of the court of last resort of that state. Whether the time has come when a more liberal rule is to be adopted in cases arising in that jurisdiction, is a matter to be answered in the courts of Michigan, rather than in the federal courts.

■ As to the claim that the trial court erred in striking from the evidence plaintiff's description of the manner in which the car started, as a "violent jerk," it is held that the description of a jar or lurch as "quite violent," unaccompanied by any evidence capable of conveying to the ordinary mind some

definite conception of the specific physical fact, and depending generally upon the degree of nervous emotion, exuberance of diction, and volatility of imagination of the witness, and not upon his capacity to reproduce by language a true picture of a past event, is of slight, if of any, assistance in determining the real character of the fact respecting which it is used. Foley v. Boston & M. Railroad, 193 Mass. 332, 335, 79 N.E. 765; 7 L.R.A.,N.S., 1076.

We find no reversible error in the directing of a verdict of no cause of action; and the judgment of the district court is, accordingly, affirmed.