*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RITA H. HUGHES, by ROBERT D. HUGHES, Personal Representative,

UNPUBLISHED
April 30, 2019

Plaintiff-Appellee,

v

No. 340447
Wayne Circuit Court
LC No. 16-013486-NI

CITY OF LIVONIA,

Defendant-Appellant.

Before: TUKEL, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, City of Livonia, appeals by right the trial court order denying its second motion for summary disposition. Because there are no errors warranting reversal, we affirm.

## A. BASIC FACTS

On August 19, 2015, Rita Hughes sustained injuries while riding on a Livonia transit bus driven by James Fobar. As part of his job responsibilities, Fobar operated the wheelchair lift, selected a spot for Hughes, and then secured Hughes's wheelchair using the Q'Straint system. While driving the bus, Fobar encountered a pothole, and the vehicle lurched. Hughes's wheelchair rolled forward, rolled backward, and then flipped backward with Hughes still sitting in it. Her head, neck, and shoulder hit the floor, and she sustained serious injuries. Fobar testified that at least one, and possibly both, of the front anchorages securing the wheelchair were loose. He secured the wheelchair once more before transporting Hughes to a hospital. Shortly after being discharged from the hospital, Hughes died.

Hughes's estate brought a negligence claim against the City, asserting that the motor-vehicle exception, MCL 691.1405, to governmental immunity was applicable. In response, the City filed a motion for summary disposition, which was denied. Following discovery, the City filed its second motion for summary disposition, contending that the Estate's claim was barred by governmental immunity. The trial court disagreed and denied the motion.

This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The City argues that the trial court erred by denying its second motion for summary disposition. This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). If a claim is barred because of "immunity granted by law," summary disposition is appropriate pursuant to MCR 2.116(C)(7). "[T]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them," when reviewing a motion under MCR 2.116(C)(7). *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*. at 429 (citations omitted). Furthermore, "[t]he applicability of governmental immunity is a question of law that is reviewed de novo." *Ray v Swager*, 501 Mich 52, 61; 903 NW2d 366 (2017). And issues of statutory construction are also reviewed de novo. *Chandler v Muskegon Co*, 467 Mich 315, 319; 652 NW2d 224 (2002).

### B. ANALYSIS

Unless a stated exception applies, governmental agencies are immune from tort liability when engaged in a governmental function. MCL 691.1407(1); *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 326-327; 869 NW2d 635 (2015). The motor-vehicle exception to governmental immunity provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner. . . ." MCL 691.1405. In this case, the trial court determined that there were factual disputes on two aspects of the "operation" of the bus. First, the court found fact questions on whether Fobar negligently secured Hughes's wheelchair. Second, the court found fact questions on whether the sudden lurch of the bus was caused by Fobar driving the bus negligently.

The City first argues that the term "operation" does not include Fobar's actions in securing Hughes's wheelchair. The legislature did not define the term "operation." *Chandler*, 467 Mich at 319. On appeal, the City contends that in *Chandler*, the Court held that the motor-vehicle exception "applies only to actual driving of the vehicle, not merely anything remotely associated with a motor vehicle." We disagree. In *Chandler*, our Supreme Court stated that the language " 'operation of a motor vehicle' means that the motor vehicle is being operated *as* a motor vehicle." *Id*. at 320. The Court clarified that the term "encompasses activities that are directly associated with the driving of a motor vehicle." *Id*. at 321. In other words, activities outside of driving can be considered part of the operation of a motor vehicle provided that those activities are directly associated with driving. Additionally, our Supreme Court has held that the

loading and unloading of passengers is an action within the operation of the bus. *Martin v Rapid Inter-Urban Transit Partnership*, 480 Mich 936, 937 (2007).[1]

The City argues that Fobar's actions in securing Hughes's wheelchair to the Q'Straint system are not part of the loading and unloading of passengers, so his actions are not part of the "operation" of a bus. However, Fobar testified that before he can transport a passenger in a wheelchair, he is required to secure that passenger's wheelchair using the Q'Straint system. His supervisor, Felicia Cross, clarified that it is required for every passenger in a wheelchair and that it is the bus driver's responsibility to ensure that the wheelchair is secure before transport. Given that the bus cannot be driven until the passenger is both on the bus and the wheelchair is secure, the trial court did not err by determining that securing the wheelchair before driving the bus is part of the loading process.

Moreover, there is a question of fact with regard to whether Fobar's actions in securing the wheelchair were negligent. The City contends that all of the estate's evidence is mere speculation premised on the mere occurrence of an accident. It is well-established that "[t]he mere occurrence of an accident is not, in and of itself, evidence of negligence." *Clark v Kmart*

---

[1] The City argues that our Supreme Court's order in *Martin* is not binding. However, "[d]ecisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal." Const 1963, art 6, § 6. The order in *Martin* contains a concise statement of the facts. The Court explained, "In this case, the plaintiff alleges that she slipped and fell down the steps of a shuttle bus owned and operated by the defendants as she was attempting to exit the bus." *Martin*, 480 Mich at 936. It also contains the reasons for the decision. The Court reasoned, "The loading and unloading of passengers is an action within the 'operation' of a shuttle bus. Accordingly, the plaintiff has satisfied the exception to governmental immunity set forth in MCL 691.1405." *Id*. Because the order satisfies the constitutional requirements to be binding, we must follow it. See *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993) (chastising the Court of Appeals for neglecting to follow a Supreme Court order disposing of an application, containing a statement of the applicable facts, and providing the reasons for the decision), and *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; ___ NW2d ___ (2018) (stating that anything entered by the Michigan Supreme Court that meets the requirements in Const 1963, art 6, § 6 is binding on this Court, including "peremptory orders to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions, notwithstanding, with all due respect, the enormous confusion they sow and the frustration they generate.").

The City also asserts that the Supreme Court's order in *Martin* violates the separation of powers doctrine, and suggests that, as a result, this Court need not follow the otherwise binding authority. Yet, the separation of powers doctrine does not require an absolute separation of the branches of government. *Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014). And statutory interpretation is a "defining aspect of judicial power." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 519; 857 NW2d 529 (2014). Therefore, it is not a violation of the separation of powers doctrine for our Supreme Court to interpret a statute enacted by the legislature.

*Corp*, 242 Mich App 137, 140; 617 NW2d 729 (2000), rev'd on other grounds by 465 Mich 416 (2001). Further, the plaintiff has the burden of producing evidence sufficient to demonstrate a prima facie case of negligence. *Berryman v Kmart Corp*, 193 Mich App 88, 91-92; 483 NW2d 642 (1992). The plaintiff must present facts that establish negligence, either directly or circumstantially. *Clark*, 242 Mich App at 140. The estate has done so in this case.

Fobar testified that he makes sure that every wheelchair-bound passenger on the bus is secure. He always uses the four-point securement system. He had secured wheelchairs similar to Hughes's many times before. Once Hughes was lifted onto the bus, he positioned her chair directly behind the driver's seat, lined up on the L-track so the J-hooks could be attached. He secures the wheelchair to the anchorage on the L-track by hearing a clicking sound. He typically leaves six to eight inches of slack on the strap, and checks it for tension. Once all four points are secure, he checks each, and makes sure that the passenger is not being choked by the cross-body seatbelt. Fobar testified that he used all four anchorages to secure Hughes's chair that day. He did not recall any difficulty in securing Hughes's chair. Yet, Fobar admitted that at least one of the front anchorages came out of the L-track when Hughes's chair tipped backwards.

In addition, plaintiff provided an expert affidavit from Lawrence Schneider, a research professor emeritus at the University of Michigan Transportation Research Institute and Department of Biomedical Engineering. After reviewing the materials related to this matter, and performing an inspection of the bus that was driven that day, Schneider made the following four conclusions. First, Hughes's wheelchair tipped over backwards because the two front anchorages became dislodged from the L-track on the floor during transit. Second, the front two anchorages became dislodged during transit because Fobar failed to properly secure them. Third, Fobar failed to properly secure the front two anchorages because sand, dirt, and debris in the L-track prevented the anchorages from totally engaging, and locking into place. Fourth, Fobar failed to confirm that the anchorages were properly secured before departure by checking the positive locking indicators, which have red lines that are supposed to line up, and would have revealed that the anchorages were not completely locked into the L-track. Based on this evidence, a reasonable juror could conclude that Fobar was negligent when he secured Hughes's wheelchair.

The City next directs this Court to *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427; 824 NW2d 318 (2012). In that case, the plaintiff "was loaded onto the bus and secured without incident," and the "plaintiff was not injured during the loading or unloading process." *Id*. at 435. The City contends that, even if Fobar negligently secured the wheelchair, Hughes was not actually injured *during* the loading process because she was injured after the bus started moving. We disagree. As noted above, there is a question of fact as to whether there was negligence in the loading process. The mere fact that the effect of that negligence—the wheelchair becoming dislodged during transit and Hughes sustaining injuries as a result—was delayed does not mean that the injuries did not result from the operation of a motor vehicle. See MCL 691.1405.

Because there was a question of fact with regard to whether Fobar negligently secured Hughes's wheelchair, the trial court did not err by denying summary disposition.

That does not, however, end our inquiry. The trial court also granted summary disposition after determining there was a question of fact as to whether Fobar's operation of the bus was negligent because he encountered a pothole. We conclude that, in this part of its ruling, the court erred. A driver owes a duty to other motorists and pedestrians to exercise ordinary and reasonable care and caution in the operation of his or her vehicle. *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). The driver must make reasonable allowances for traffic, weather, and road conditions. *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967). However, a driver is not required to "guard against every conceivable result, to take extravagant precautions, [or] to exercise undue care." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935). It is well-settled that sudden jerks and stops are considered normal incidents of travel which, alone, do not give rise to liability. See, e.g., *Seldon*, 297 Mich App at 437 (sudden stops are normal incidents of travel); *Russ v Detroit*, 333 Mich 505, 508; 53 NW2d 353 (1952) (mere sudden stop does not create liability); *Sherman v Flint Trolley Coach, Inc*, 304 Mich 404; 416; 8 NW2d 115 (1943) (mere sudden stop to retrieve passenger is not actionable negligence); *Zawicky v Flint Trolley Coach Co*, 288 Mich 655, 658-659; 286 NW 115 (1939) (ordinary sudden jerks and jolts are normal incidents of travel). Specifically, sudden jerks or jolts that occur when a bus stops or starts are considered normal incidents of travel. *Getz v Detroit*, 372 Mich 98, 101-102; 125 NW2d 275 (1963). In the context of negligence claims involving the operation of passenger vehicles, a carrier is not liable for the injuries that a plaintiff sustains as a result of normal incidents of travel. *Seldon*, 297 Mich App at 437. Because passengers should reasonably expect such occurrences, the fact that a passenger is injured by a jerking or jolting motion is, by itself, insufficient proof of negligence. *Getz*, 372 Mich at 101-102. However, if the jerk or jolt is "unnecessarily sudden or violent," it can constitute sufficient proof of negligence to impose carrier liability. *Id*.

Here, there is no material question of fact that Fobar did not breach his duty to exercise ordinary and reasonable care while driving. Fobar's testimony established that he was operating the bus as a motor vehicle at the time that the accident occurred. He slowed down as he approached a traffic light. He was driving at 25 to 30 miles per hour when he hit a pothole, and Hughes's wheelchair fell backwards. Hughes's daughter testified that there was a sudden jolt, but she did not know what caused it. She did not see the bus come into contact with anything else. Because sudden jolts are a normal incident of travel, *Getz*, 372 Mich at 101-102, and because the estate has offered no evidence to demonstrate that the sudden jerk was precipitated by any negligent behavior by Fobar, the trial court erred by determining that questions of fact existed regarding whether Fobar negligently operated the vehicle by encountering a pothole. That error, however, does not warrant reversal.[2]

---

[2] The City argues that because this is a motion for summary disposition brought under MCR 2.116(C)(7), we should remand for an evidentiary hearing so the trial court can resolve the factual disputes. We decline to do so. The factual questions remaining pertain to whether Fobar was or was not negligent in his operation of the bus. The existence or nonexistence of negligence is a question of fact for the jury. *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). This is because "[g]enerally, once a standard of conduct is established, the reasonableness of an actor's conduct under the standard is a question for the factfinder, not the

Affirmed.

/s/ Jonathan Tukel
/s/ Michael J. Kelly

---

court." *Jackson v Saginaw Co*, 458 Mich 141, 146; 580 NW2d 870 (1998) (alteration in original). They do not involve preliminary questions of law, such as whether the operation of a landfill is subject to the proprietary function exception to governmental immunity. See *Dextrom*, 287 Mich App at 431. Accordingly, we decline to remand for an evidentiary hearing.