*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARSHA ANDERSON,

        Plaintiff-Appellant,

v

TRANSDEV SERVICES, INC., and M1 RAIL,

        Defendants-Appellees,

and

OLD REPUBLIC INSURANCE COMPANY,

        Defendant.

FOR PUBLICATION
May 12, 2022
9:10 a.m.

No. 356541
Wayne Circuit Court
LC No. 19-013288-NI

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

MARKEY, J.

In this negligence action, plaintiff appeals by right the trial court's final order dismissing her no-fault claim against defendant Old Republic Insurance Company (Old Republic). Plaintiff, however, specifically challenges the trial court's earlier opinion and order granting summary disposition to defendants Transdev Services, Inc. (Transdev), and M1 Rail (M1).[1] Plaintiff argues that the trial court erred by granting the motion for summary disposition because she submitted evidence sufficient to create a genuine issue of material fact concerning whether defendants breached their duty of care owed to plaintiff. We disagree and affirm.

## I. BACKGROUND

This case arose when plaintiff was injured while riding the QLine streetcar in Detroit, Michigan. As the streetcar departed from its stop, plaintiff allegedly fell and suffered numerous

---

[1] Defendants Transdev and M1 shall be collectively referred to as "defendants." Defendant Old Republic is not a party to this appeal.

injuries. According to plaintiff, after boarding the QLine, but before she had time to insert her ticket and find a seat, the streetcar driver "took off," causing her to fall to the floor. When asked about the span of time between her stepping onto the streetcar and the streetcar's forward movement, plaintiff responded, "It was a matter of seconds. It wasn't that long." Plaintiff testified that she fell on top of another woman and that one of her friends also fell, apparently landing on top of plaintiff.

Kyle Miller, the driver of the streetcar, testified with respect to the boarding and departure process. He stated, "I close the doors, the doors beep and it has lights on it, and I exit—proceed on from the platform." Miller testified that he pushes a button to initiate the closing of the streetcar's doors, triggering warnings that flash. According to Miller, only when the doors are closed—a process that takes between 10 and 15 seconds—is he then able to move the streetcar. The warning lights and sounds go off continuously until the doors are fully closed. Miller otherwise independently operates the throttle and brakes for the streetcar, controlling its forward movement and speed; however, the streetcar will brake automatically at a preset maximum speed. Miller also indicated that he cannot see passengers on the streetcar unless he physically turns around in his seat, which he does not do before employing the throttle to move the streetcar forward. Miller could not recall ever waiting a certain amount of time between closing the doors and moving the streetcar forward, and he had no recollection of any policy or training that required a driver to wait a set period of time once the doors close before driving the streetcar.

Plaintiff filed a complaint following the incident alleging negligence by defendants and seeking the recovery of no-fault benefits from Old Republic.[2] With respect to the negligence claim, plaintiff asserted that as owners and operators of the QLine defendants owed her—a business invitee using the service—a duty of reasonable care. Plaintiff additionally alleged that defendants' statuses as common carriers created an affirmative duty to act reasonably and to protect plaintiff from harm. Plaintiff further contended that defendants, by and through their employee-driver Miller, breached their duties when, just after plaintiff boarded the streetcar, the driver "suddenly and without warning" accelerated at a high rate of speed, causing her to fall to the ground.

Defendants then moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff failed to present any evidence that defendants or their employee acted negligently. Following a hearing on the motion, the trial court issued an opinion and order granting defendants summary disposition. Ruling that the sudden stopping or starting of a streetcar alone is insufficient evidence of negligence and that streetcar operators are generally not required to wait for all passengers to be seated before moving, the trial court concluded that plaintiff failed to submit evidence of a special reason why the streetcar driver should have delayed moving forward in the present case. The court further determined that plaintiff failed to establish as a matter of law that the acceleration of the streetcar was unnecessarily violent or sudden. This appeal followed.

---

[2] Plaintiff's no-fault claim against Old Republic was dismissed by stipulated order and is irrelevant to the instant appeal.

## II. STANDARD OF REVIEW AND (C)(10) PRINCIPLES

We review de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). MCR 2.116(C)(10) provides that summary disposition is appropriate when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition to defendants because she submitted evidence sufficient to create a genuine issue of material fact as to whether defendants' driver was negligent. Plaintiff contends that driver Miller breached the duty of care by (1) failing to wait for her to insert her ticket and find a seat before moving the streetcar forward and/or (2) accelerating the streetcar in a particularly violent and sudden manner.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). With respect to common carriers, our Supreme Court in *Frederick v Detroit*, 370 Mich 425, 437-438; 121 NW2d 918 (1963), clarified some confusion in the law that had existed regarding the duty of care owed by such carriers:

Accordingly, when a duty arises as a matter of law between a carrier and its passengers, it is the common law duty of due care and it may be defined simply as the duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier. It then becomes the function of the jury to determine from the evidence what action, if any, should have been taken or omitted in order to measure up to the standard of a reasonably prudent carrier in the same circumstances. By instructing the jury that high care or the highest care is required of carriers, a court impinges upon the jury's obligation to determine the carrier's compliance with its duty of due care by consideration of the proofs of what a reasonably prudent carrier would have done in the circumstances disclosed by the evidence.

## A. ALLEGED NEGLIGENCE FOR FAILING TO WAIT FOR PLAINTIFF TO INSERT HER TICKET AND FIND A SEAT BEFORE MOVING THE STREETCAR FORWARD

In the early case of *Ottinger v Detroit United R*, 166 Mich 106, 107; 131 NW 528 (1911), our Supreme Court observed that "[t]he general rule adopted by the courts is that street railway companies are not required to defer starting cars until all passengers are seated, and that a train or street car may be started without waiting for a passenger to reach a seat after entering a vehicle, unless there is some special and apparent reason to the contrary." (Quotation marks and citation omitted.)  Later, in *Getz v Detroit*, 372 Mich 98, 99-100; 125 NW2d 275 (1963), the Michigan Supreme Court applied the rule from *Ottinger* to an injury sustained by a passenger when she fell while standing at the front of a bus waiting for a transfer ticket.  The *Getz* Court explained:

> Plaintiff's contention as to . . . negligence is twofold. First, because plaintiff was short, obese, 50-some years of age, and took about a minute to board the bus, it was negligent for the driver to fail to look at her, note her condition, and keep the bus at a standstill until she was seated. Plaintiff cites, in this connection, *Wells v Flint Trolley Coach, Inc*, 352 Mich 35; 88 NW2d 285 [(1958)]. There the plaintiff, a 79-year-old woman, was described by the Court as "old and feeble" and the driver knew of it. It was held to be a question of fact whether the driver was guilty of negligence in failing to give the passenger sufficient time, in alighting from the bus, to clear it and reach a place of safety and in failing to render the assistance necessary to one whose inability to care for herself was apparent. There is no testimony in the case at bar, however, to show that a look at plaintiff by the driver would have disclosed to him that she was frail, weak, infirm or in any wise disabled or in need of assistance. The testimony and the allegations in plaintiff's declaration are, to the contrary, that she was healthy and strong and performed heavy work. Hence, the *Wells* Case is inapt.  [*Getz*, 372 Mich at 99-100.]

Under *Getz* and *Ottinger*, the question in this case becomes whether there was some special and apparent reason why we should not apply the general rule that streetcar drivers are not required to wait until all passengers are seated before operating the streetcar in a forward motion.  Plaintiff argues that because passengers are required to place their tickets in a receptacle before finding a seat, the law should recognize an obligation or duty by the driver to wait to move forward until a passenger goes through the process of submitting his or her ticket and finds a seat.  We conclude that plaintiff's argument does not constitute a "special" reason for not applying the general rule.

Although *Getz* did not place any focus on the fact that the plaintiff was waiting for a transfer ticket when she fell, ticket-related transactions on boarding a bus or streetcar are certainly commonplace and recognizing an exception to the general rule as proffered by plaintiff would swallow up the rule.

To the extent that plaintiff contends that the driver should have waited because it was an unusually busy day, the Supreme Court's ruling in *Ottinger* reflects the reasoning that overcrowded streetcars is one of the primary reasons that the general rule of nonliability exists. *Ottinger*, 166 Mich at 108 ("So common and unavoidable is the overcrowding of street cars that straps are usually provided, and, if these cars could not lawfully be started until all passengers were seated, or if acceleration of and checking speed could not be prompt, the efficiency of such cars would be seriously impaired."). In sum, we hold that the trial court did not err by ruling that plaintiff failed to submit evidence of a special reason why the streetcar driver should have delayed moving forward in the present case.

## B. ALLEGED NEGLIGENCE FOR ACCELERATING THE STREETCAR IN AN UNNECESSARILY VIOLENT AND SUDDEN MANNER

The law in Michigan is clear that a plaintiff is not entitled to recover for injuries sustained as a result of the sudden stopping or acceleration of a bus or streetcar, absent other evidence of negligence in the operation of the vehicle, as these sudden movements are incidents of travel, which travelers must reasonably anticipate. See *Russ v Detroit*, 333 Mich 505, 508; 53 NW2d 353 (1952) (affirming directed verdict in favor of the defendant); *Sherman v Flint Trolley Coach, Inc*, 304 Mich 404, 416; 8 NW2d 115 (1943) (affirming directed verdict in favor of the defendant); *Zawicky v Flint Trolley Coach Co, Inc*, 288 Mich 655, 658-659; 286 NW 115 (1939) (affirming JNOV in favor of the defendant); *Bogart v Detroit*, 252 Mich 534, 537-538; 233 NW 406 (1930) (affirming directed verdict in favor of the defendant).

As referenced earlier, in *Getz*, 372 Mich at 99, the plaintiff, a 54-year-old woman, fell on a city bus when the bus accelerated from a stop. The Michigan Supreme Court upheld the trial court's grant of a JNOV in favor of the city of Detroit for the reason that sudden jerks or jolts in the stopping and starting of a city bus are common incidents of travel, which must be expected by a passenger, and for the reason that the plaintiff did not present any additional evidence of negligence such as excessive speed, repeated lurching of the bus from side to side, or of following another vehicle too closely. *Id*. at 101-102. Liability can attach if the jerk or jolt is unnecessarily sudden or violent. *Id.* at 102.

In this case, the only evidence provided in support of the acceleration being unnecessarily violent or sudden was plaintiff's testimony that her friend also fell. Plaintiff relies on the statement in *Ottinger* that no one else had fallen during the sudden stop. *Ottinger*, 166 Mich at 108-109. But as the trial court recognized below, this fact was mentioned only briefly in *Ottinger*, while the Court mostly focused on the plaintiff's fall being a product of natural and expected forces. *Id.* We cannot conclude that evidence that two people fell when the streetcar pulled forward created a genuine issue of material fact regarding whether the streetcar's acceleration was unnecessarily violent or sudden.

Plaintiff's reliance on *Adelsperger v Detroit*, 248 Mich 399; 227 NW 694 (1929), is entirely misplaced because the facts there are easily distinguishable and were as follows:

> Plaintiff was a passenger for hire in a motorbus of defendant on one of its streets. Seats of the bus were occupied and plaintiff was standing, holding a handrail above. Overtaking a Ford car, the driver of the bus sought to pass and was not accommodated. Continuing his effort to pass for nearly three blocks, the driver became angry. There is evidence that the bus moved at excessive and unlawful speed, 30 to 35 miles per hour, that it swayed, that it was very close to the Ford car, as close as five feet, that passengers protested and frequently sounded the buzzer, and that a movement of the Ford toward an intersecting street caused the driver of the bus to make sudden application of brakes and a sudden turn of the steering wheel. He testified: "I knew from the suddenness of my stop and jamming on of both brakes and the suddenness with which I twisted the wheel that if passengers were standing in the aisle, they would possibly be propelled forward or fall or something happen to them, if they were not hanging on." Plaintiff fell, and there is evidence that she suffered serious and permanent injuries. [*Id.* at 401.]

Here, there is no evidence of conduct by Miller even remotely comparable to the negligent behavior of the driver in *Adelsperger*. In sum, we hold that the trial court did not err by ruling that plaintiff failed to establish as a matter of law that the acceleration of the streetcar was unnecessarily violent or sudden.[3]

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Anica Letica
/s/ Colleen A. O'Brien

---

[3] Plaintiff complains that the caselaw on the subject at issue is old and outdated and does not account for the impact of modern technology on transportation. We see no legal or factual basis to disregard or distinguish the caselaw from long ago.